George Brugis for Mr. Corey White. I have a little allergy so I'll struggle through this. May it please the court, counsel. This is an FALA case and the FALA provides compensation for railroad workers injured on the job. There's a couple of different ways to prove liability against a railroad, one of which is in section 53 and section 54 of 45 United States Code that says that there's violation of federal regulations that that's strict liability with no contributory negligence. So the evidence in this case basically came from two important witnesses, Mr. Walton, who is a Union Pacific manager of track maintenance, and my liability expert, Alan Blackwell. At 49 CFR part 213, there are federal track safety standards that deal with safe movement of train traffic over tracks. And what we're dealing with here is part of the Union Pacific mainline, it's a double track mainline that goes from Clinton to maybe Iowa City, farther north I think. Des Moines? I'm not sure. But it's part of the mainline between California and Chicago. A very important section of the Union Pacific track, they run all kinds of freight trains on there, manifest trains, coal trains, and part of the testimony was these very dangerous hazardous ethanol trains. So the railroad is required by federal law to inspect the track on a regular basis, and one of the ways they inspect it is by sending geometry cars over the track. And the geometry cars will detect surface defects in the rail. In the period of time that Mr. White, Mr. White was an employee of the Union Pacific as both a conductor and an engineer in the operative period of time, operated trains primarily over the Clinton sub where this is at issue. And between 2008 and 2013, and looking at the geometry car records, there was 651 admitted federal track safety standard violations. These are federal violations of federal law. In addition, there was 1,082 urgent defects, which are almost violations of federal law. To put that in perspective, Mr. Blackwell, who was a manager of track maintenance for the Union Pacific in North Platte for many years, said that if he had four violations in a similar period of time, that he'd be unexplained to his boss why he should still have a job. So this is, Mr. Blackwell explained it as the worst inspected and worst maintained section of track he's ever seen in his railroad career. And these violations, 651 federal track safety standard violations, were admitted by Mr. Walton, the railroad's witness. Counselor, your time's going to flee pretty quick. If you'd get to the fighting issue of the statute of limitations, that would probably be helpful to us. Okay. So the reason, I mean, that's kind of background because these track violations are what causes the dips and potholes in the track. And I wanted to make the point that there was a lot of very serious violations, a lot of these dips and a lot of potholes in this section of track that Mr. White operated over. So he had a back injury back in 1999. He went to work for the Iowa-Montana Rail League in 2001, passed the physical by the railroad doctor and was able to go to work, went to change jobs for the Union Pacific in 2004, again passed the physical. So the 1999 injury is kind of red herring in this case because both railroad doctors said he could work. What happened with Mr. White as he's operating this train is he'd hit these potholes and it's jarring. It's like hitting a big pothole in the street. If you're going down at 50 or 60 miles an hour, it's mind-jarring. It'll knock the fillings out of your teeth. It's a big deal. I mean, the railroad engineering rules say that you have to maintain level surface on the track because when you have these drainage issues that cause these track defects, the federal track safety standard violations, you can break couplings which can cause a derailment. You could break the springs on the locomotive, a 500,000-pound locomotive, from hitting these potholes. You can break bolsters on the train cars. So it's a significant trauma when you hit these potholes. And what Mr. White explained is that during a period of time that he was operating and he hit one of these potholes, maybe once a day, he would have pain in his back. But there's no evidence in the record whatsoever that it was anything other than a transitory pain. And part of the record, he described it as if you stub your toe. You stub your toe, you have some transitory pain and it goes away. There is no evidence in this record prior to 2010 that Mr. White had an injury. Well, what about his testimony under questioning about experiences in 2007 and 2008 that seemed to be attributable to his work on the railroad? Absolutely. And what he said is actually in his deposition testimony that Judge Longstaff quoted going back to 2001, the very first time he operated on a train and he'd hit one of these potholes, he would feel pain in his back, a jarring, and even some pain down his leg. But there's no evidence it was anything other than transitory pain. And he compared it to stubbing your toe. So that's not an injury. Mr. White last had medical care for his back injury in 2000. He had no medical visit, no treatment, no medical record, no record in his employment of any back complaints, any back injury, any back problems until 2010. So you have his testimony saying that this was not an injury, that he didn't know he was injured until 2010. You have him testifying that he had good quality of life. You have him testifying he never missed a day of work for 10 years because of any back problems. In 2009, he had a sprained shoulder and he was treating with an orthopedic surgeon. For those visits in 2009, he never had any complaint of back pain at every visit to the orthopedic surgeon. He never had any complaints of a back injury until 2010 when he started treating and it was really a serious downward spiral. So he's testifying that it's pretty bad pain once a run. Yes, I knew it was from riding over the tracks. So what you're saying is that that's different than an injury? Absolutely. He can't file a lawsuit for that. He can't file a lawsuit if you're riding on the train and you hit a pothole and you have back pain and it goes away five minutes later. You can't file a field case for that. Did he testify to that? Did he testify to how long the pain would last per run? He compared it to stubbing your toe where you have intense pain for a little bit and then it goes away. That was a question that was asked of him and I don't know that he compared it to stubbing the toe, did he? Well, actually that's the only evidence in the record where it talks about whether or not this pain when he had it was transitory. But there's no transitory pain. There's no evidence that this pain continued even for the course of the run because he went back to work the next day. He never missed a day of work because of back pain. And I think that's what the Seventh Circuit talks about is that pain is not injury. Just because you have this incident where you have a little pain, that doesn't mean you're injured. And so from a civil procedure standpoint and when you're looking at a motion for a judgment to close a plaintiff's case, what Judge Gritzler did was he gave every inference to the railroad. There was zero evidence in the record that there was an injury. And what Judge Gritzler did was made the inference in favor of the railroad that these complaints of pain that he had from hitting these potholes was an injury. But there was no evidence of that. So what the judge is supposed to do, especially in an FVLA case, you know FVLA case for both the plaintiff and the defendant, a critical part of the right given by Congress to both parties is they have a jury-determined question as a fact. So especially in an FVLA case when you're looking at the evidence here and there's evidence of pain but no evidence of injury and undisputed unequivocal testimony that he had good quality of life until 2010. He never missed a day of work until 2010. There's no medical record, no employment record, no record anywhere of any back injury. So how would you articulate when injury occurs? So that's a good question. I mean, I think in this case it manifests itself when it becomes when he knows that he has an injury and he knows the cause of it serious enough that he went and had medical care when it starts affecting his life. You know, there's a lot of arguments. I mean, it's like the Urey case, the Urey v. Thompson, United States Supreme Court that adopted the cases. Well, hold on. You want to say, you want us to say the standard should be when it becomes serious enough that the employee seeks medical care, that's when it's an injury? That's probably not right, is it? Because it could be an injury without him seeking care. And that's the Fry's case. So how would you articulate when it becomes an injury? I think it's multifactorial and, you know, in Sweatt, outside the limitations period, he had a doctor visit and his testimony more than three years before he filed the lawsuit that the doctor gave him a diagnosis of a work-related injury and he knew it was work-related. So there's no question in a case like that that the statute of limitations has run. You know, there's other cases where there's... Suppose an employee like White had, after five years of this riding, gone to a doctor and said, every time I go on one of these trips, I hit one of these ruts and I get this bad pain down my leg and it lasts for half an hour. Would that be an injury then? You know, I think if you look at all the factors, the jury could say that was an injury. Why isn't that this case then? He just didn't go to the doctor, but he had the injury. Because it's a question of fact. Because on the other side of that, to look at the evidence and its totality, you had White saying he didn't have an injury. He didn't know he had an injury. The evidence is that this was nothing more than transitory pain like stubbing your toe. There's no medical record. He never missed a day of work. He had, you know, good quality of life. He did all the things that he normally did and it wasn't until 2010 that he had all these two major surgeries. In 2013, he had his spine fused from L3 to S1, steel rods put in his back. And then in 2015, it was revised. He has really serious injuries. So, I was going to say the Urey case, you know, that guy who was a locomotive engineer, bringing in silica sand every day for 30 years and, you know, I'm sure some days on the railroad he was coughing. Maybe he had some chest pain. But the Supreme Court said it's a jury question when he knew or should have known. What's the evidence? You've talked about quality of life. What did he testify to that was a change in quality of life? You're saying he had it, a good quality up until the time he went to the doctor. It was three things. Number one, his work, that he was able to work every day. And then he wasn't? And then he wasn't, yes. He was, he tried to go back to work, I think, six trips after his surgery in 2013 and the track was still in the same condition he wasn't able to. He had, he had family time. He has two children. He was able to do things with his children and he was able to do things that he liked to do. So those are the three things. He wasn't able to do those two things, the second two things, after he went to the doctor? Correct. After he had these, well, he had major back surgery. But the other important thing is, the other standard is, you know, when reasonable minds can differ. And Judge Longstaff wrote a 25-page opinion looking at the exact same facts. The only difference was that the facts Longstaff looked at were from 2001 to 2010. And Judge Grichner had the exact same facts, but only in 2006 or 2007. But it was the exact same facts. And Judge Longstaff said, this is a question of fact for a jury. So, you know, between Judge Grichner saying that he weighed the testimony, which you can't do, the weighing of the evidence, the evidence, overwhelming evidence, showing that there was a question of fact, that the jury could credit my man's testimony, Mr. Grichner. He had quality of life. There's no doctor visits. He didn't know he had an injury. That, you know, the Judge weighing the evidence, and Judge Longstaff saying, who's a reasonable jurist, reasonable minds could differ. You know, he wrote a 25-page opinion analyzing the same evidence, saying that this is a jury question. So I'd like to reserve two minutes if I can, Your Honors. All right. Thank you. Thank you, Mr. Prubius. Ms. Dawson? May it please the Court, Counsel? Good morning, Your Honors. Before I dive into Union Pacific's arguments, I'd like to correct a couple of things that were said in Plaintiff's argument. Number one, Plaintiff never stated on the record that he compared his pain to stubbing his toe. As Your Honor pointed out, he was said, have you experienced in your life stubbing a toe, something like that? Plaintiff said, yes. He never compared this pain that he experienced while riding locomotives to a transient pain. What Mr. White said was that single shift in 2007-2008, at least once a day, he experienced pretty bad pain that reverberated from his back down his legs, that he knew in that moment the pain was caused by his work. Additionally, Plaintiff did not testify that he wasn't sure if he was injured. What Plaintiff testified to on direct exam questions elicited by Mr. Bruges was that when he came to work in the railroad in 2004, he was all healed up from his back injury from 1999. And that's critical, because one of the arguments made in Plaintiff's brief is that Mr. White didn't know whether or not this injury was caused by his work. But what we know is that Plaintiff testified on page 563 of the short appendix that he did not have any medical problems while working in 2004. He then went on to testify at the short appendix, Your Honors, at pages 573 through 574, that he never experienced pain in his back doing any other activities. He never experienced pain in his back outside of work. He didn't experience pain in his back when he was riding horses. He didn't experience pain in his back when he was doing activities with his children. The only time he experienced it was when he was at work, and that's critical. Wouldn't that suggest that it wasn't a bigger injury that was affecting his life generally, that it was just something that, you know, when you go to work and whatever your work may be, there's something annoying about it, and it happens about once a day. But it doesn't happen when I'm riding horses or playing with my kids. Well, Your Honor, two things to that point. First, as it goes to affecting his life, Plaintiff's life was affected in the same way both before and after this incident. Plaintiff testified on the stand that his pain, he told his doctors that he had had that pain throughout the time he had worked at Union Pacific. Plaintiff did go back to work after his surgery. In fact, he held four jobs after his surgery. So to present to you all that after the surgery he had no quality of life is inconsistent with the record. Mr. White testified that after he had that fusion surgery, he then went to work breaking horses at Seven Gables. He then went to work as a fence installer, and he also went to work as Moffitt detailing cars. So he was working both before and after the surgery. So to say that he had no quality of life afterwards is not supported by the record. Additionally, as it relates to doing things with his children, Mr. White testified on cross-examination, as did his wife, his ex-wife, Ms. Drees, that after the surgery they did go out, they bought a farm, they were able to do animals, play with their children. So Mr. White's quality of life both before and after the incident was affected. But what Mr. White said was that there was no way for him to attribute the pain he was feeling to anything other than work. And what's critical here is it's an objective person standard. It's not whether or not Mr. White testified on the stand, it didn't know I was injured. It's whether or not a reasonable person looking at the context would determine that somebody has a duty to investigate. And Mr. White knew no later than 2008 that he was experiencing this pain on a daily basis. And this wasn't just intermittent aches and pains. This isn't normal body soreness, as you point out. This is specific pain in a specific location that Mr. White admits is the same pain for which he ultimately sought medical treatment. This is pain in the low back that he had radiculopathy down his legs. And so it's not just general muscle soreness, I go home at the end of the day, I don't feel good. This is an incident that occurs specific to going over an area of the track. And he said, I knew in my own head at that time the symptoms were caused by the work activity. What's the limitation period for the claim? Pardon, Your Honor? What's the limitations period for this claim? It's a three year statute of limitations. So under the discovery rule, once a person is in possession of the knowledge that they have an injury and the probable cause of that injury, the statute starts to run on that date. So plaintiff did not file his lawsuit until August of 2012. So the fact that by 2008 he was on notice of the fact that he was experiencing pretty bad pain in his low back on a daily basis that shot down his legs and that in that moment he associated it with the work he was doing, that is more than sufficient under the discovery rule to start the statute running. When do you say the injury occurs? Your Honor, injury occurs when symptoms occur. So as the 7th Circuit noted in sweat and in freeze, an injury is when the injury manifests itself. Well, suppose the first time he went over one of these bumps he had this pain in the back. Is that the injury then or does it take a while for it to accrue? The injury in a cumulative case such as this, it would take a while for that to accrue. So it would be one thing as Judge Kelly pointed out, just on one day you feel a little bit of pain, but this is a consistent pattern. This is not transient. So when does the injury occur? Is it on the third day or after two years or when do you say the injury occurred? The injury occurs when a reasonable person would think, I need to investigate this. I cannot sit around and wait. So would it be the first week? Would it be the second week? It likely, Your Honor, would be to the point where you think this isn't going away. This isn't something that's transient. And in this case, Mr. White said that when he was working in the yards back in 2004 through 2006, he would experience some pain when he was riding in the yards in the locomotive. It wasn't until 2007 and 2008 that that pain got to the point where he was experiencing it when he went over a dip every time and he was having the pain running down his legs. So it would be at that point, looking, standing back and looking in the greater context, that's when he's on notice. And the reason for that is because you can't allow a person to sit and wait and not do anything when they know that something has occurred. So what Mr. Bruges argued is that you don't know you're injured until you have a medical diagnosis. And as Your Honor pointed out, the courts have been unanimous that a medical diagnosis is not required. Additionally, the way that sweat was characterized, sweat versus Union Pacific, which was the case that Judge Griswold... Well, but I'm still trying to get a handle on when the injury occurs. Are you saying the first time it went down the leg, that's an injury? Or is it still multiple times of it going down the leg? It would be, Your Honor, when that person knows, when a reasonable person would know... Know what though? Know what? Would know that they have something that is going on inside their body that they should investigate. So yes, when you have pain on a daily basis, so say for a month, if you are going overrun and every time you do something, you feel a burning pain that's pretty bad and you know it's being caused by something, that's when yes, the burden shifts to that person to say, you know what, I have a duty to investigate this. If it's, as the more than a scratch, there's certainly no need for you to file in order to preserve your rights. But when this is happening day in and day out, so Your Honor, I can't give you a specific number of days because I think it is multifactorial, but when you're... Well, but here the court is saying as a matter of law, it occurred at some point more than three years before the action was filed. Yes, and here what the court... So what is it that caused some date to be the date when the injury occurred? It was not that the court said it was what date the injury occurred. The court said that at least by 2008. So you had from 2004 to 2008, the plaintiff testifying in his own words that every single day, conservatively, at least once a run, he had pretty bad pain in his low back that he associated with work that would go down his leg. So the court did not decide that it was a specific date. What the court decided was that at the latest 2008, the cumulative effect of four years of an individual experiencing this kind of pain that shoots down their leg that they in their own minds are associating with work. At that point, there's no argument that a reasonable person, when armed with those facts, both that they know they're having continuous symptoms and that those symptoms are associated with the work. There was nothing transient about this. This was a person who said this happened every single time. Additionally... I think by transient, he meant that it went away before he went home that night. And that's not what was testified to, Your Honor. What was testified to is that when he would go home on the weekends, the pain would get better, and then when he would come back to work, it would reappear. So he never said, and there's not a citation in the record where it says that it just lasted for a few minutes and that it didn't impact him again. Indeed, the medical diagnoses, the doctors who testified said that Mr. White told them he had been experiencing this pain for years. So he categorized it, and it was cited in that the doctors stated he had had chronic pain. Indeed, Mr. White, when he was questioned, why did you tell the doctors you had had chronic pain for 10 years, he said, I guess I was too honest. I wish I hadn't said that. Because now, looking back, but he admitted to his own doctors that pain had been chronic. It was his words that was entered into evidence by the doctors. So this was not transient pain. It was the exact opposite. The evidence presented at trial was that Mr. White testified that he had had chronic pain when he told his doctors about the pain that he had had for 10 years. Additionally, Your Honors, you've seen the record. The evidence presented at trial was not the same factual scenario that the district court ruled on a couple of years earlier. The evidence presented on trial, the evidence that the jury was going to be asked to decide upon, was that Mr. White testified that that pain between 2007 and 2008 was something that he felt in his back. It was the pain for which he ultimately sought medical treatment. It was pretty bad pain, and in that moment, he associated it with his work. Additionally, not only was the factual scenario completely different than that which Judge Longstaff had considered, but there was additional case law that the court relied upon and looked to. In Sweatt, there were two separate injuries, and in Plaintiff's reply brief, he states that Sweatt's clearly distinguishable because there was medical care. There wasn't medical care as it related to the shoulder. In that case, the Seventh Circuit ruled that the statute of limitations accrued by the summer of 2009, and the reason that the court determined that was because Mr. Sweatt was experiencing symptoms in his hands that he associated with the use of hands tools, as well as symptoms in his shoulder that he associated with the use of hand tools. The fact that there had been one doctor's visit related to carpal tunnel syndrome on November 15th of 2009, 15 days before the running of the statute, the court said that was part of the analysis. There was no medical care as it related to the shoulder, and the court ruled that both as to the shoulder and to the hands, the statute ran in the summer of 2009 because Mr. Sweatt admitted to two things. One, he had symptoms of the injuries by the summer of 2009, and two, he associated those symptoms with his work, and that's exactly what we have in this case. We have a man who is on notice that he has symptoms in his low back. He's on notice that those symptoms only occur when he's doing one activity. He's on notice that they're pretty bad and they go down his leg, and he's on notice that he has a responsibility to investigate those under the discovery rule. If we allow plaintiff's interpretation of the discovery rule to stand, the statute of limitations would have no effect because the plaintiff could sit idly by and wait up until somebody gives him a medical diagnosis. Isn't there an opposite argument, though, too, that you don't want to encourage every pain so he has a pain down his leg on day one? You've got to go to the doctor. There's the flip side of your argument, your sort of policy argument. The flip side of that argument has been dealt with several times, Your Honor, and the flip side of that argument is, of course, as the Seventh Circuit noted in green, every scratch does not need to be litigated. It's only when, and in green, the contrast to that is green, the woman sued claiming that her shoulder was injured. Three times over the past 15 years, she had had an instance of shoulder pain. When somebody has, yes, one instance of pain, one instance of a low back pain, you don't need to do that, and you're not on notice that you're potentially injured, but when that pain happens day in, day out, in the same location, then you are on notice that you've been injured. So if somebody simply has muscle soreness one day, goes and sees the doctor and says, you know, my shoulder's kind of hurting, and they say, okay, we'll ice it, and then 10 years later, they have an injury at work, it makes sense that they didn't need to sue 10 years earlier because of something that happened on one specific instance. The factual scenario here is very different, though, and this is a situation where, from 2004 up to 2008, in 2004, a plaintiff started experiencing some pain in his back. That pain continued to get worse and worse up until 2008 when it was shooting down his legs. So it's not that the district court decided. It was on this date that the statute accrued. What the district court said is, based on the record evidence that was presented to the jury, a reasonable person who's armed with those facts is on notice that they've been injured and that they have a responsibility to investigate it. And here, we don't need to apply the reasonable person standard because plaintiff admitted he associated it with work. In many of the cases cited in these briefings, it's the district court saying, well, he should have known that it was what was causing his pain, and he did nothing. And for those reasons, the district court's hands were tied because the statute of limitations, a timely filed matter, is a condition precedent to recovery. So before you can even get to the question of negligence, you must show that the claim was timely filed. And plaintiff's admissions on the stand failed to show that his claim was timely filed. There was nothing the court could do because the jury would not have been able to rule on the case because the evidence was clear and inescapable result resulted. For those reasons, I ask the court to affirm. Thank you, Ms. Dawson. Mr. Brugis, your rebuttal? So the statute of limitations is an affirmative defense filed by the railroad, and it's governed by the Eighth Circuit pattern jury instruction for FVLA cases 15.62 that I think both parties tendered. And sometimes it's good when looking at these cases to flip it around. If Judge Grissner had granted a directed finding, directed judgment for me on liability and on causation when there was conflicting testimony like we've heard here, I don't think that's proper. I don't think it would stand in a FVLA case. If there was any evidence in this record that there was an injury, not just this transitory pain that went away and that he could go home on weekends and ride horses and go do work at night during this exact same period of time, riding horses and doing work and doing stuff with his kids, having no pain, I mean, there's the evidence of it being transitory when he hits these potholes. I mean, it wouldn't have been proper to grant an objective verdict for me. So it's not proper to direct a verdict for them when there's conflicting evidence, especially when the judge weighs the evidence. The reason I talked about at the beginning how bad this track was is because maybe if they maintained their track, he could have kept working through today without ever having back pain. So the fact that they're saying that because he felt back pain every day, that that somehow helps him, that's because they had 651 track violations. If they would have maintained their track as required to by law, he may never have been injured. He may never have had any pain. He would have had nothing. So how can you say when, you know, hitting these track violations that could break springs and break a bolster and causes this transitory pain to him becomes an injury for statute of limitations purposes, under the FELA, that's something that the jury has to decide. The evidence was conflicting and certainly the jury could have credited all the testimony that shows he did not have an injury, just this transitory pain, and felt that, you know what, we don't think he was really hurt until 2009, 2010, when he started treating and the pain really got bad. So I'd ask that you reverse the directive finding, the judgment directive for the railroad, and let a jury decide this case. You know, there's extreme liability against the railroad with catastrophic injuries. The FELA should be liberally construed to compensate these injured guys and give them a chance with the jury. Thanks, Judge. Thanks, Judge. Thank you, counsel. Court wishes to thank both counsel for your argument this morning, the briefing that you've provided the court. We'll take your case under advisement. You'll be excused.